HAWTHORNE, Justice.
 

 In this suit the lower court rendered an in rem judgment in favor of plaintiff, Oil Well Supply Company, and against Independent Oil Company in the principal sum of $9,195.33, recognizing plaintiff, as furnisher of materials and supplies, to have a lien and privilege on a certain oil and gas lease, designated as the Hobbs lease, insofar as that mineral lease covered and affected the south 9.4 acres described therein, and the rigs, machinery, appurtenances, equipment, etc., thereon for the amount due it for materials and supplies, under the provisions of Act No. 68 of 1942, LSA — RS 9:4861, and maintaining a writ of provisional seizure on the property upon which the lien was asserted.
 

 Numerous persons, who were shown by the conveyance records to have an interest or claim in the oil and gas lease on which the wells were drilled and for which plaintiff furnished supplies, were made parties to the suit so that they might appear and assert whatever rights they might have therein. From the judgment of the district court above described, none of these parties appealed except V. K. Howard, Cypress Oil Company, First National Company of Seminole, Oklahoma, H. W. Snowden, C. C. Wilson, and I. Greenberg. No appeal was taken by the defendant Independent Oil Company.
 

 The material and supplies sold by the plaintiff, Oil Well Supply Company, to the defendant, Independent Oil Company, were, according to a stipulation in the record, physically located at the Oil Well Supply Company’s warehouse in Shreveport, were physically delivered direct to the lease on the dates shown by the invoices attached to the petition, and were used in either drilling, completing, or operating the wells.
 

 Appellants contend that, for plaintiff to have the lien and privilege afforded by Act No. 68 of 1942, there must be some contractual relationship between the one claiming the privilege and the owner, operator, producer, or driller of the wells, and that no such contractual relationship has been proved or established in this case.
 

 
 *939
 
 Section 1 of Act No. 68 of 1942, insofar as pertinent here, reads as follows:
 

 “ *
 
 * * any person * * * who shall * * * furnish * * * material or supplies * * * for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells, shall have a lien and privilege on such oil, and on such oil, gas or water well or wells and the lease whereon the same shall be located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and all other structures thereto attached for drilling, equipment and operation of such well or lease, for the amount due * *
 

 This statute is plain and unambiguous. It sets forth with certainty-that any person who furnishes materials or 'supplies for or in connection with the drilling of any well in search of oil, etc., or for or in connection with the operation of any oil well, has a privilege on the things enumerated therein for the amount due, and does not require a contract or any contractual relationship between the furnisher of the materials and the owner, operator, producer, or driller of the oil well. That such a requirement was not provided for in the statute was recognized in Sklar v. Oil Incomes, Inc., 5 Cir., 133 F.2d 512, 514, wherein it was said:
 

 “ * * * the general and prevailing rule of construction of such statutes, not only in Louisiana, but elsewhere, is that they are for the benefit of persons who furnish material which is consumed in connection with, or becomes worked, or incorporated, into the property of another. Such a rule of construction is peculiarly applicable to the Louisiana lien statutes for the Louisiana statutes giving mechanic’s liens, to those who perform labor and furnish material for the drilling and operation of oil and gas wells, unlike those of other states, do not provide that the labor or materials must be furnished under express, or implied contract with the lessee or owner of the land, his agent or with the contractor or sub-contractor. Instead, they give the lien to any person who furnishes material which goes into or becomes a part of the lease without regard to the existence of a contract, express or implied, with the owner of the property on which the lien is. charged * *
 

 Under the statutes of most states the claimant for a lien for materials furnished for the drilling of an oil well must establish that the materials .were furnished under an express or implied contract, but Summers in his work on Oil and Gas points, out that this is not true under the Louisiana statute.
 

 “Whether a lien for labor performed or materials furnished in the drilling and operating of oil and gas wells is claimed under a. general mechanic’s lien statute or under a special statute, the lien claimant must establish that the labor was performed and the materials were furnished under an express or implied contract. Special statutes giving
 
 *941
 
 mechanic’s liens to those who perform labor and furnish for the drilling and operation of oil and gas wells, except the Louisiana statute, expressly provide that the labor or materials must be furnished under an express or implied contract with the lessee or owner of the land, his agent, or with a contractor or subcontractor. * * * ” 4 ■Summers, Oil and Gas (Perm.Ed.), sec. 702, p. 116.
 

 A review of the privilege statutes of this state shows that, when it is intended that a privilege claimant must have a contract, either express or implied, with a particular person, the Legislature makes such a provision in plain terms. For instance, under LSA-RS 9:4961 the laborers on buildings, streets, railroads, canals, ditches, etc., are given a first privilege where
 
 their services are engaged by the proprietor or agent of the proprietor.
 
 Again, any persons who furnish feed or medicines for a race horse
 
 to or upon the order of the owner or the person in charge
 
 have a privilege for the unpaid portion of the price upon all the race horses of the owner or in charge of the person, under LSA-RS 9:4661. Under LSA-RS 9:4801 the contractor, architect,' etc., who furnish material for the erection, construction, etc., of immovable property
 
 with the consent or at the request of the owner thereof or his authorized agent or representative or of any person with whom the owner has contracted
 
 for such work, have a privilege, etc. Still further, under LSA-RS 9:4813 architects and consulting engineers,
 
 employed by the owner or his duly authorized agent or representative
 
 in connection with buildings erected, have a privilege for the payment of their contract charges on the -building or other work and on the land on which it stands.
 

 On the other hand, there are numerous other statutes which make no provision for a contract, express or implied. For instance, LSA-RS 9:4501 gives to any person operating a garage a privilege upon the automobile for the cost of repairs made, and makes no requirement for the work to be authorized by any particular person. Again, under LSA-RS 9:4523 a thresher-man is given a privilege for services rendered on the crop which he has threshed, and there is no requirement for the services of the thresherman to have been contracted for or authorized by any particular person. The same is true as to LSA-RS 9:4601 and LSA-RS 9:4901. The former gives a privilege on property hauled to any person engaged in the business of hauling for charges or labor performed in connection therewith, and the latter grants a lien to any person who furnishes supplies, materials, or labor which enters into the construction, maintenance, etc., of the permanent roadbed and structures of a railroad upon the roads, tracks, etc., of the railroad for the amount due for such supplies, materials, or labor.
 

 
 *943
 
 The statute here under consideration does not provide for any contractual relation between the furnisher of materials and the owner, operator, producer, or driller of the oil well. Under this statute all that is necessary for the lien and privilege to attach is for one to furnish the supplies which are used in the drilling of an oil well or in connection therewith, and according to the stipulation of fact in this record plaintiff, the Oil Well Supply Company, furnished the supplies by delivering them from its warehouse direct to the leased premises, and these materials and supplies were actually used in either drilling, completing, or operating the oil well on the lease. Under these circumstances, the judgment appealed from is correct.
 

 Appellants contend that the language found in Section 2 of the act establishes that, for the lien to attach, the contractual relationship for which they contend must exist. A reading of this section discloses that it deals only with the prescription of the lien and privilege and not with requisites for its attachment.
 

 Appellants further contend that an affirmation of the judgment in the instant case will result in the granting of a privilege to a furnisher of a furnisher and upon the contract of one not authorized to bind the property. We do not think that this result will follow from our affirming the judgment in this case for the reason that the record does not show that Oil Well Supply Company was the furnisher of a furnisher; but, as heretofore pointed out,, it furnished the materials and supplies by delivering them direct to the leased premises on which the well was drilled, and these materials and supplies were actually used in the drilling of the oil well or in connection therewith.
 

 Appellants cite and rely on the case of J. S. Abercrombie Co. v. Lehulu Oil Co., 181 La. 644, 160 So. 126, 128. The holding of this court in that case is that, where a well is drilled on a subleased portion of a lease, the furnisher of labor and material used in drilling the well has a lien and privilege only on the sublease and not on the entire lease. Appellants contend that the following language in that case is favorable to them:
 

 “ * * * a. statute conferring a lien is never construed so as to impose, by implication, the lien upon the property of one who is not responsible for the debt, or upon the property of any one but the one who owes the debt. * * * ”
 

 In that case it was necessary for the court to construe the statute because the meaning of the word “lease” therein was debatable. A construction of the statute is not necessary in this case because, as we have previously pointed out, its language and intent are clear as to the problem involved in this case. What was said there in regard to construing lien statutes, therefore, is not applicable here. In the later case of Sargent v. Freeman, 204 La. 997, 16 So. 2d 737, 738, this court pointed out that in
 
 *945
 
 'certain cases it is the clear intendment of the statute that property of third persons .shall be subject to the privilege, saying: * * It is the clear intendment of the statute to create in favor of laborers and materialmen a lien on the drilling rig and equipment irrespective of whether it is •owned by the person drilling the well or by a third person; otherwise, the statutory language cannot have any practical effect.”
 

 Appellants rely on other cases, which we have read carefully and find not to be decisive here.
 

 For the reasons assigned, the judgment ■appealed from is affirmed; appellants to pay all costs.
 

 LE BLANC, J., absent and takes no part.